IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MINA ELIZABETH HEMMY JOINTLY WITH MARK ANTHONY DIAZ AS EXECUTOR(S) AND BENEFICIARY OF A CONSTRUCTIVE TRUST, | CR NO. 15-00432 DKW RLP |
| Plaintiffs, | ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER, DISMISSING COMPLAINT AND DENYING AS MOOT PLAINTIFFS' APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS |
| vs. | |
| A-1 AUTO SALES, A-1 ACCEPTANCE CORPORATION CONSISTING OF CALVIN COHEN AS THE TRUSTEE, | |
| Defendant. | |

**ORDER DENYING EX PARTE MOTION FOR TEMPORARY
RESTRAINING ORDER, DISMISSING COMPLAINT AND
DENYING AS MOOT PLAINTIFFS' APPLICATION
<u>TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS</u>**

**<u>INTRODUCTION</u>**

On October 19, 2015, Plaintiffs pro se Mina Elizabeth Hemmy and Mark

Anthony Diaz filed a Complaint, Ex Parte Motion for Temporary Restraining Order

1

("TRO") and Application to Proceed in District Court Without Prepaying Fees or Costs ("Application").   The Complaint seeks an affirmative injunction compelling Defendant A-1 Auto Sales and/or A-1 Acceptance Company to transfer an automobile title to Plaintiffs based on Plaintiffs' assertion that they have fully satisfied the balance owing on the 2011 Nissan Leaf.   Plaintiffs' Ex Parte Motion for a TRO is DENIED because they have made no showing of either a likelihood of success on the merits or irreparable harm.   Further, because the basis of this Court's jurisdiction is not entirely clear, the Court DISMISSES the Complaint with limited leave to amend and DENIES the Application as moot.

## DISCUSSION

Plaintiffs are proceeding pro se, and, therefore, the Court liberally construes their pleadings.   *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants.") (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)).   Upon review of the Ex Parte Motion for TRO, the Court concludes that Plaintiffs are not entitled to the relief they seek without notice to Defendants because they have not demonstrated any irreparable injury or likelihood of success on the merits.   Further, the Complaint and documents attached thereto do not establish that this Court has jurisdiction over this matter, as discussed below.

2

## I.   __Plaintiffs' Ex Parte Motion for TRO Is Denied__

Although difficult to decipher, it appears that Plaintiffs seek a court order directing Defendant to transfer title to a 2011 Nissan Leaf and to provide Plaintiffs "with notice the account has been zeroed out."   Complaint ¶ 7.

A court may issue a TRO without written or oral notice to the adverse party only if the party requesting the relief provides an affidavit or verified complaint providing specific facts that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."   Fed.R.Civ.P. 65(b)(1)(A).   Plaintiffs fall far short of meeting this burden.   They have not provided *any specific facts* establishing that immediate and irreparable injury, loss, or damage will result to anyone.   Here, neither the TRO nor the Complaint establish any likelihood of irreparable injury.   Plaintiffs also failed to certify in writing any efforts made to give notice to Defendants or the reasons why notice should not be required before a TRO is considered or issued.   *See* Fed.R.Civ.P. 65(b)(1)(B).   Nor have Plaintiffs made any effort to demonstrate that notice is impossible or fruitless, as required for an ex parte TRO.   *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (finding that a TRO was improperly issued because notice to the adverse party was neither impossible nor would it render the action fruitless).

Moreover, even if Defendants did have notice of the TRO, Plaintiffs fail to meet their substantive burden to justify the extraordinary remedy they seek. The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See, e.g., Hawaii v. Gannett Pac. Corp.*, 99 F. Supp. 2d 1241, 1247 (D. Haw. 1999). A "plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citation omitted). "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). *Winter* emphasized that plaintiffs seeking preliminary relief must demonstrate that "irreparable injury is likely in the absence of an injunction." 555 U.S. at 22; s*ee also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

Plaintiffs do not meet that burden here. Their Ex Parte Motion for TRO states in full:

4

1.     Pursuant to Fed.R.Civ.P. 65 and LCvR 65.1, Plaintiff hereby moves the Court to issue a Temporary Restraining Order and Preliminary Injunction requiring Defendant or its agents to cease and desist the following non-speculative imminent actions; all attempts to contact the plaintiff, any attempts of grand larceny on trust assets currently owned by the beneficiaries/plaintiff as this would cause irreparable injury to the plaintiff.

2.     In support of this motion, plaintiff relies on evidence provided in exhibit B which adequately asserts my right to the trustee to cease and desist all contact unless by signed letter, yet the plaintiffs/beneficiaries has been unlawfully harassed and threatened by the defendant.   (Exhibit C last paragraph pg 2).

The exhibits referenced in the TRO and attached to the Complaint do not demonstrate any irreparable harm or injury to Plaintiffs or further detail the "harass[ment]" noted in the TRO.   To the contrary, Exhibit B appears to be a letter, dated September 9, 2015, sent by Hemmy to Defendants with the subject line, "conditional acceptance and request for statement regarding accounting."   The letter states:

I am in receipt of your statement dated 8/31/2015 and we conditionally accept your bill for $18,124.97 upon or receipt of a verified claim to my office signed by an authorized representative from you [sic] Company submitted with the following proof for consideration:

A.     <u>Proof.</u>   I agree to pay your claim of 18,124.27 upon proof that the account/stock # 212233 is not satisfied and paid in full and reflecting a zero balance due. (SEE MONEY ORDER ENCLOSURE)   To validate your claim you are

5

required within 10 days of receipt to correct the following statements as being untrue; or agree, consent, and assent to the statements as fact, by remaining silent.

## STATEMENT OF FACTS

(1)   On August 31st, 2015 we received an offer for a pay-off price of $18,194.27 by Calvin Cohen on behalf of A-1 Auto Sales

(2)   Payment was received by A-1 Auto Sales via my Pre-paid Trust Account.   See PS Form 3811 Domestic Return Receipt from Mina E. Hemmy [exhibit A]

(3)   There exists no evidence or certification of dishonor to the tender and therefore the facts establish that the final credit to the account is made and the final adjustment is brought to Zero.

(4)   The account balance for the total sum of $18,194.27 is now paid in full.

    (a)   <u>Verification.</u>   Your claim must be verified to prove the validity, by presenting the alleged obligation under oath of notary seal and signed by an officer of A-1 Auto Sales, under penalty of perjury as to accord with impartiality honesty of integrity. [sic]

1.   This is an unrebutted statement of facts, your response is not required, however if you fail to rebut these statements within 14 days then it shall certify your consent, assent and agreement to the statements as true, correct, complete and not misleading.

6

2.      Additionally all further communication to our office shall be made only by an Officer of A-1 Auto Sales, signed in ink, including the title and name of the individual verifying the data and affirming its accuracy and authenticity.   Please cease and desist all communications that are not signed in accordance with provision made herewith.   That failure to do so constitutes a prejudice to my rights and is damaging to me.

Complaint, Ex. B (9/9/2015 Letter).   Although it is far from clear, Exhibit C appears to be a print-out of cellular telephone records for either incoming or outgoing calls to various telephone numbers.   There is no indication to whom these records relate, the source or identities of the incoming or outgoing calls, or the significance of the filters applied to retrieve these results.   In short, nothing in the TRO demonstrates any past or imminent future injury to Plaintiffs caused by Defendants.   Indeed, nothing Plaintiffs have submitted so much as shows any conduct by Defendants beyond apparently preparing and sending a single monthly statement to Plaintiffs relating to the 2011 Nissan Leaf in August 2015.

Plaintiffs have not established that they are likely to succeed on the merits because their claims are both unclear and unsupported, and, as discussed below, the Court is without evident subject matter jurisdiction over this action.   Plaintiffs' vague allegations present no serious question that they are in danger of irreparable

injury, that the balance of equities tips in their favor, or that an injunction is in the public interest. *Alliance for Wild Rockies*, 632 F.3d at 1135. Accordingly, Plaintiffs' Ex Parte Motion for TRO is DENIED.

## II. **The Court Lacks Subject Matter Jurisdiction**

Pursuant to 28 U.S.C. § 1915(e), the Court subjects every *in forma pauperis* proceeding to mandatory screening and orders the dismissal of the case if it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (2000) (stating that 28 U.S.C. § 1915(e) "not only permits but requires" the court to *sua sponte* dismiss an *in forma pauperis* complaint that fails to state a claim).

### A. **Standard of Review**

As noted previously, Plaintiffs are proceeding pro se, and, therefore, the Court liberally construes their pleadings. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants.") (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)). The Court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior

to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). Nevertheless, the Court may dismiss a complaint on its own motion. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under [Rule] 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief."); *Ricotta v. Cal.*, 4 F. Supp. 2d 961, 968 n.7 (S.D. Cal. 1998) ("The Court can dismiss a claim *sua sponte* for a Defendant who has not filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6).").

A plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet—that the court must accept as true all of the allegations contained in the complaint—"is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In other

words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).   Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8.   *Iqbal*, 556 U.S. at 679.

Claims may also be dismissed *sua sponte* where the Court does not have federal subject matter jurisdiction.   *Franklin v. Murphy*, 745 F.2d 1221, 1227 n.6 (9th Cir. 1984); *see also* Fed. R. Civ. P. 12(h)(3); *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 593 (2004) ("[I]t is the obligation of both the district court and counsel to be alert to jurisdictional requirements.").   "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."   *See Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).

### B.   <u>Federal Question Jurisdiction Is Lacking</u>

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute."   *United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).   At the pleading stage, a plaintiff must allege sufficient facts to show a proper basis for the Court to assert subject matter jurisdiction over the action.

*McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Johnson v. Columbia Props. Anchorage, L.P.*, 437 F.3d 894, 899 (9th Cir. 2006); Fed. R. Civ. P. 8(a)(1).

In general, a plaintiff may establish subject matter jurisdiction in one of two ways.   First, he may assert "federal question jurisdiction," based on allegations that a defendant violated the Constitution, a federal law, or treaty of the United States. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").   The United States Supreme Court has recognized that a "plaintiff properly invokes § 1331 jurisdiction" by pleading "a colorable claim 'arising' under the Constitution or laws of the United States."   *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006). Second, a plaintiff may invoke the court's "diversity jurisdiction," which applies "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."   28 U.S.C. § 1332(a)(1).   In order to establish diversity jurisdiction, a plaintiff must establish complete diversity of the parties.   *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (explaining that § 1332(a) "requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants").

11

Plaintiffs assert only federal question jurisdiction, alleging that this "suit is under the federally enacted Uniform Commercial Code (UCC), Uniform Trust Code (UTC), Article 1 of the U.S. Constitution, U.S.C. 31 § 5118(c).   Because of this standing there is 'federal question' in constructive trust and commerce." Complaint ¶ 1.   Plaintiffs also state that they bring "this action under [UCC] Article 3 and Article 9-210 declaring that discharge of a bank debt has been made with lawful U.S. Tender in accordance with UCC 3-104, Article 1, Section 10, Clause 1 of the U.S. Constitution, U.S.C. Title 31 § 5118(c)(3) for the balance of an automobile loan issued in commerce by the trustee (defendant)."   Complaint ¶ 4. "Additionally, the defendant has violated the plaintiffs rights under the Fair Debt Collection Practices Act (FDCPA) § 805(c) and HRS § 443B-1 through 20 and 480-D, as the plaintiff has advised the defendant in writing via a 'conditional acceptance' (Exhibit B), to cease and desist contact the plaintiff unless through a signed letter[.]"   Complaint ¶ 5.   These legal conclusions, however, do not establish claims that arise under federal law so as to create federal question jurisdiction.

First, all claims relating to the Uniform Commercial Code arise under state rather than federal law, and, therefore, do not provide a court with federal question jurisdiction.   *See*, *e.g.*, *Motorola, Inc. v. Perry*, 917 F. Supp. 43, 48 n.5 (D.D.C.

1996); *Chase Home Finance, LLC v. Mungaro*, 2005 WL 3334451, * 1-2 (N.D. Ga. Dec.8, 2005) (finding no federal question jurisdiction where defendant claimed there was federal question jurisdiction on the basis of the UCC); *Whitus v. Countrywide Mortg., Inc.*, 2004 WL 2165362, *3 (D. Or. Sept. 24, 2004) (finding reference to the UCC is insufficient to raise a federal question).   Likewise, any claim for violation of the Uniform Trust Code would be a matter of state law.[1]   *See* National Conference of Commissioners of Uniform State Laws, Uniform Trust Code (Last Revised or Amended in 2010), *available online at* www.uniformlaws.org/shared/docs/trust_code/utc_final_rev2010.pdf.

Second, Plaintiffs' specific references to the United States Constitution and various federal statutes are not sufficient to create federal question jurisdiction as alleged here.   A federal court must dismiss for lack of jurisdiction if the federal claim that is the basis for jurisdiction is obviously without merit or is wholly frivolous.   The test is whether the cause of action alleged is "so patently without merit as to justify the court's dismissal for want of jurisdiction."   *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 70 (1978).   Although

---

[1]The Court notes that Hawaiʻi has not adopted the Uniform Trust Code as of the date of this Order. *See* National Conference of Commissioners of Uniform State Laws, Uniform Trust Code Legislative Fact Sheet--Enactments, *available online at* http://uniformlaws.org/LegislativeFactSheet.aspx?title=Trust%20Code; *see also* Haw. Rev. Stat. Ch. 560 (Uniform Probate Code); HRS §§ 560:1-201 & 7-201 (establishing jurisdiction of state circuit court to serve as probate court).

Plaintiffs reference Article 1 of the United States Constitution, that provision does not provide a private cause of action under the circumstances alleged here.[2]  *See Avila v. Pappas*, 591 F.3d 552, 553 (7th Cir. 2010) ("It is not enough to utter the word 'Constitution' and then present a claim that rests on state law.   If it were, every claim that a state employee committed a tort, or broke a contract, could be litigated in federal court.   It is therefore essential that the federal claim have some substance—that it be more than a pretext to evade the rule that citizens of a single state must litigate their state-law disputes in state court.").   Plaintiffs' invocation of 31 U.S.C. § 3118(c)[3] also fails to confer subject matter jurisdiction pursuant to 28

---

[2]Article 1 of the United States Constitution addresses the limits of Congressional authority and therefore has no evident bearing on the claims made here.

[3]This statute relating to coins and currency does not create a private cause of action under the circumstances alleged here.   The statutory provision cited by Plaintiffs, entitled "Gold clauses and consent to sue" reads:

> (c)(1) The Government withdraws its consent given to anyone to assert against the Government, its agencies, or its officers, employees, or agents, a claim--
>> (A) on a gold clause public debt obligation or interest on the obligation;
>> (B) for United States coins or currency; or
>> (C) arising out of the surrender, requisition, seizure, or acquisition of United States coins or currency, gold, or silver involving the effect or validity of a change in the metallic content of the dollar or in a regulation about the value of money.
>
> (2) Paragraph (1) of this subsection does not apply to a proceeding in which no claim is made for payment or credit in an amount greater than the face or nominal value in dollars of public debt obligations or United States coins or currency involved in the proceeding.

U.S.C. § 1331.

Finally, Plaintiffs' bare allegation without factual enhancement that "the defendant violated the plaintiffs rights under the Fair Debt Collection Practices Act (FDCPA) § 805(c)," fails to state a claim as currently alleged.[4]   Complaint ¶ 5.   In order to state a claim under the FDCPA, Plaintiffs must allege that Defendants qualify as "debt collectors" within the meaning of the statute.   The FDCPA generally prohibits "debt collectors" from making false or misleading

---

> (3) Except when consent is not withdrawn under this subsection, an amount appropriated for payment on public debt obligations and for United States coins and currency may be expended only dollar for dollar.

31 U.S.C. § 5118(c).

[4]Under this section of the FDCPA, if a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except --

> (1) to advise the consumer that the debt collector's further efforts are being terminated;

> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

> If such notice from the consumer is made by mail, notification shall be complete upon receipt.

15 U.S.C. § 1692c.

representations and from engaging in various abusive and unfair practices in collecting debts. *See, e.g., Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business *the principal purpose of which is the collection of any debts*, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or *due another*." 15 U.S.C. § 1692a(6) (emphasis added). There is no allegation that Defendants have attempted to collect the debts of "another." To the contrary, Plaintiffs maintain that the debt they once owed to Defendants has been discharged. Complaint ¶ 4; *cf. Lyons v. Bank of Am., NA*, 2011 WL 3607608, at *12 (N.D. Cal. Aug. 15, 2011) ("The FDCPA applies to those who collect debts on behalf of another; it does not encompass creditors who are collecting their own past due accounts."). Plaintiffs' allegations are inconsistent with the statutory definition of "debt collector," and accordingly, fail to state a claim for violation of the FDCPA. Plaintiffs do not allege sufficient factual matter, accepted as true, to state a claim under the FDCPA that is plausible on its face. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). At present, Plaintiffs fail to state a claim under the

FDCPA, and the Court remains without federal question subject matter jurisdiction. Because amendment of the FDCPA may be possible, Plaintiffs are GRANTED leave to amend only their FDCPA claim, as explained in further detail below.

Despite Plaintiffs' attempt to create federal question jurisdiction by listing various Constitutional and statutory provisions, none of the enumerated laws provide a legitimate basis for this Court to hear this case.   With the exception of their FDCPA claim, Plaintiffs' allegations sounding in tort, breach of contract, breach of fiduciary duty, breach of trust, unfair and deceptive acts or practices and relating to the Uniform Commercial Code are state law claims that may be appropriately brought in Hawai'i state courts.   These claims may not, however, be brought in federal court, absent a clearly pled basis for federal jurisdiction.   *See Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996) ("A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction.").   Accordingly, the Court is without the authority to adjudicate these claims, and the Complaint is DISMISSED.

As result of the Court's dismissal of the Complaint for lack of subject matter jurisdiction, Plaintiffs' Application to Proceed In District Court Without Prepaying Fees or Costs is DENIED as moot.

17

## III.   **Leave to Amend**

The Court is mindful that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."   *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).   As discussed above, as currently alleged in the Complaint, Plaintiffs fail to state a claim for violation of the FDCPA. Because amendment *may* be possible, the Court GRANTS leave to file an amended complaint, consistent with the terms of this Order, by **November 13, 2015**.   This Order limits Plaintiffs to the filing of an amended complaint that attempts to cure the specific deficiencies identified in this Order.   New or different theories, causes of action, or additional parties are not permitted.

If Plaintiffs choose to file an amended complaint, they are CAUTIONED that they must clearly identify the basis for this Court's subject matter jurisdiction. Plaintiffs should also clearly allege the following: (1) the constitutional or statutory right Plaintiffs believe was violated; (2) the name of the defendant who violated that right; (3) exactly what that defendant did or failed to do; (4) how the action or inaction of that defendant is connected to the violation of Plaintiffs' rights; and (5) what specific injury Plaintiffs suffered because of that defendant's conduct.   *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).   Plaintiffs must repeat this process for

each person or entity named as a defendant.   If Plaintiffs fail to affirmatively link the conduct of each named defendant with the specific injury suffered, the allegation against that defendant will be dismissed for failure to state a claim.

Plaintiffs are CAUTIONED that if they elect to file an amended complaint, they must pay the statutory filing fee or submit a fully executed application to proceed without prepayment of fees or costs.

## CONCLUSION

Based upon the foregoing, Plaintiffs' Ex Parte Motion for TRO is DENIED, the Complaint is DISMISSED with limited leave to amend, and the Application is DENIED as moot.   Plaintiffs are granted to leave to file an amended complaint no later than **November 13, 2015**.   The Court cautions Plaintiffs that failure to file an amended complaint, along with the required filing fee or a fully executed application

//               //



//               //



//               //

to proceed without prepayment of fees by **November 13, 2015**, will result in the

automatic dismissal of this action.

IT IS SO ORDERED.

DATED:   October 20, 2015 at Honolulu, Hawai'i.

_____
Derrick K. Watson
United States District Judge

*Mina Hemmy, et al. v. A-1 Auto Sales ;* CV 15-00432 DKW-RLP;
**ORDER DENYING EX PARTE MOTION FOR TEMPORARY
RESTRAINING ORDER, DISMISSING COMPLAINT AND DENYING AS
MOOT PLAINTIFFS' APPLICATION TO PROCEED WITHOUT
PREPAYMENT OF FEES OR COSTS**